United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

INTEGRATED STORAGE CONSULTING SERVICES, INC., a Colorado corporation,

Plaintiff,

v.

NETAPP, INC., a Delaware corporation,

Defendant.

Case No.: 5:12-CV-06209-EJD

**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS**

**[Re: Docket No. 15]**

Plaintiff Integrated Storage Consulting Services, Inc. ("Plaintiff" or "ISCSI") has brought the above-captioned lawsuit against Defendant NetApp, Inc. ("Defendant" or "NetApp") alleging several causes of action related to a contract dispute between the parties. Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint. The Court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the hearing date. Having fully reviewed the parties' papers, the Court will GRANT-IN-PART and DENY-IN-PART Defendant's Motion to Dismiss.

# I. Background

## A. Factual Background

### 1. The Parties

Defendant is a Delaware corporation that sells products and services that facilitate the storage of electronic data. Def.'s Mot. to Dismiss 1, Docket Item No. 15. Defendant also "partners" with competitors that wish to sell Defendant's products as a "reseller." Id. at 4. Plaintiff, a Colorado corporation, is one such "reseller." Compl. ¶ 2, Docket Item No. 1. In addition to being a "direct competitor in the relevant market as NetApp," Plaintiff sold Defendant's products and services as a "registered reseller" from 2008 to 2013. Compl. ¶¶ 12, 18; Pl.'s Opp'n to Def.'s Mot. to Dismiss 1–2, Docket Item No. 20.

Plaintiff alleges that resellers of Defendant's products obtain numerous benefits by executing a reseller authorization agreement. Compl. ¶ 17. A reseller generates a commission when it is able to "register" a potential customer for Defendant and sell Defendant's products to the customer. Id. When a reseller wants to sell Defendant's products to a potential customer, the reseller must first place a "registration request" with Defendant. Id. If Defendant grants the registration request, that reseller can begin selling Defendant's products to the customer and can usually sell products at lower prices than partners who have not obtained permission from Defendant. Id.

### 2. The Agreements Between the Parties

In April 2008, Plaintiff and Defendant entered into a "Reseller Authorization Agreement" (the "2008 Agreement") that allowed Plaintiff to sell Defendant's products and earn "margins in the range of 15% to 45% of all revenues received by NetApp from the customers introduced by ISCSI." Compl. ¶¶ 12, 16; see also 2008 Agreement, Docket Item No. 14, Ex. A. The 2008 Agreement appointed Plaintiff as an "authorized, non-exclusive RESELLER of Products and

Services." 2008 Agreement ¶ 2.1. Both parties were able to terminate the 2008 Agreement "at any time for cause or convenience upon thirty (30) days prior written notice." Id. ¶ 3.2.

On January 19, 2011, Plaintiff and Defendant entered into the 2011 Reseller Authorization Agreement (the "2011 Agreement"), after the 2008 Agreement had expired. 2011 Agreement, Docket Item No. 14, Ex. B. The 2011 Agreement carries largely the same terms as the 2008 Agreement but was changed in one detail material to this lawsuit: the mutual termination provision provides for termination of the 2011 Agreement without cause upon 30 days prior written notice. Id. ¶ 4.2. The 2011 Agreement expired on January 31, 2013, pursuant to paragraph 4.1: "This Agreement shall commence on the Effective Date and continue thereafter for a period of two (2) years and shall expire either on January 31st or July 31st subsequent to the end of the two (2) year term, whichever is earlier, unless terminated earlier by either party upon thirty (30) days prior written notice." Id. ¶ 4.1.

**3. Defendant's Dealing with Third-Parties**

**a. ST Micro**

In December 2008, Defendant allowed Plaintiff and another reseller, Agilysis, to begin selling Defendant's products to a company called ST Micro. Compl. ¶ 24. Plaintiff alleges that Defendant failed to inform Plaintiff of Agilysis' status as a seller to ST Micro and "encouraged ISCSI [Plaintiff] to continue to work to win the business for NetApp [Defendant] with no intention of supporting ISCSI's efforts and harming ISCSI's future business relationship with ST Micro." Id. Plaintiff further alleges that it received no additional orders for Defendant's products after Agilysis was allowed to sell products to ST Micro in December 2008. Id. Plaintiff also asserts that in June 2009 Defendant failed to pay Plaintiff its promised commission on a contract with ST Micro. Id. ¶ 32.

United States District Court
For the Northern District of California

**b. CaridianBCT**

Plaintiff alleges that on December 14, 2009, the parties entered into a "Teaming Agreement" (the "CaridianBCT Teaming Agreement") that provided for the delivery of Defendant's products from Plaintiff to a company called CaridianBCT. Id. at ¶ 19; see also CaridianBCT Teaming Agreement, Docket Item No. 20-2, Ex. H-1. The terms of the CaridianBCT Teaming Agreement were finalized sometime between February 16, 2010, and June 18, 2010, as shown by emails sent between employees of Plaintiff and Defendant. See CaridianBCT Teaming Agreement Formation Emails, Docket Item No. 20-2, Ex. H-2.

Under the CaridianBCT Teaming Agreement, Defendant agreed to the following terms:

- Keep the ISCSI team informed of any communication with the CaridianBCT team and the outcomes of such communication. This includes emails, conversations and meetings.
- Not participate in any direct pricing or terms and conditions negotiations with the customer. All negotiation discussions are to be directly with ISCSI only and not discussed with the customer. It is ISCSI's responsibility only to present pricing and terms and conditions to the customer.
- Both parties agree to work towards at least a targeted 15% margin profit for ISCSI in any approved pricing.
- Not engage in any behavior that could jeopardize or undermine ISCSI's Trusted Advisor status in the account.
- Not discuss the specifics of this project or ISCSI's engagement with CaridianBCT with any other VAR or their representatives.
- Extend the opportunity registration as needed for the duration of this project in accordance with NetApp's Channel Partner "Rules of Engagement Process."

CaridianBCT Teaming Agreement. Under the agreement, Plaintiff agreed to the following terms:

- Represent the NetApp NAS solution as the preferred technology choice.
- Work to influence the customer to define the technical requirements for this project that benefit the NetApp technology.
- Work to influence the customer project team to contain this as a NAS refresh project and try to eliminate the customer's requirement to submit this project to an RFI/bid process.
- Provide NetApp with timely and accurate information regarding the process, progress and status of the project.
- Keep the NetApp team informed of any communication with the CaridianBCT team and the outcomes of such communication. This includes emails, conversations and meetings as they pertain to NetApp business opportunities.
- Participate in NetApp opportunity planning sessions as requested by NetApp

- Work to drive project progress towards a NetApp purchase prior to April 25, 2010.

Id.

**c. Tri-State**

Plaintiff alleges it had been "the established NetApp partner at Tri-State," a company that purchased Defendant's products through Plaintiff's services as a reseller. Compl. ¶ 44. In March 2011, Defendant restructured the process by which resellers would be allowed to sell products to customers. Id. The new policy allowed potential customers to choose which reseller it would purchase Defendant's products from in the future, allowing multiple resellers to bid for one customer's business. Id. ¶ 46. At the end of the bidding period, Tri-State did not choose Plaintiff as its reseller of Defendant's products. Id. ¶ 44. Plaintiff alleges that Defendant used this new policy to disrupt the bidding process that Plaintiff had engaged itself in with Tri-State prior to implementation of the policy, and that Defendant's employees encouraged Tri-State to choose a reseller other than Plaintiff. Id. ¶¶ 44, 47.

**d. Xilinx**

Plaintiff was previously approved to sell Defendant's products to a company called Xilinx. Id. ¶¶ 54-59. Plaintiff alleges that in October 2012, Defendant did not allow Plaintiff to continue to resell its products to Xilinx. Id. ¶ 59. Plaintiff maintains that without the Xilinx contract, it cannot continue to operate. Id. ¶ 61.

**B. Procedural History**

Plaintiff brought this lawsuit alleging eleven causes of action: (1) breach of the 2008 and 2011 Agreements; (2) breach of the CaridianBCT Teaming Agreement; (3) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.; (4) common law unfair competition, (5) breach of the implied covenant of good faith and fair dealing; (6) unjust

Case5:12-cv-06209-EJD Document39 Filed07/31/13 Page6 of 23

United States District Court
For the Northern District of California

enrichment; (7) intentional misrepresentation/fraud; (8) intentional interference with contractual relations; (9) intentional interference with prospective economic relations; (10) negligent interference with prospective economic relations; and (11) quantum meruit. See Compl.

On January 30, 2013, Defendant filed the present Motion to Dismiss seeking dismissal of all causes of action. See Def.'s Mot. to Dismiss.

## II. Legal Standard

The Federal Rules of Civil Procedure require pleadings to contain "short and plain" statements explaining why jurisdiction is proper, why the "pleader is entitled to relief," and also the specific relief sought by the pleader. Fed. R. Civ. P. 8(a)(1)-(3). Although the pleader does not need to plead "'detailed factual allegations,'" and allegations are accepted as true, it must still "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). Facial plausibility is achieved when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663.

The pleader's allegations will be accepted as true so long as certain pleading requirements are met. Id.; see also Twombly, 550 U.S. at 555-56. If a pleader's allegations of wrongdoing are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" a court will not accept the allegations as true. Iqbal, 556 U.S. at 663. The pleadings must state a cause of action that is "context-specific." Id. The Court can use its "experience and common sense" to determine if a cause of action is supported by mere conclusions or well-pleaded factual allegations. Id. at 664. "Legal conclusions can provide the complaint's framework" but "they must be supported by factual allegations." Id. Finally, "well-pleaded factual allegations" will carry a presumption of "veracity" and the court will determine whether it is plausible that the pleader is entitled to relief. Id.

6

Case No.: 5:12-CV-06209-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS

Case5:12-cv-06209-EJD Document39 Filed07/31/13 Page7 of 23

United States District Court
For the Northern District of California

**III. Discussion**

**A. Breach of the 2008 and 2011 Agreements (Claim 1)**

In order to establish a cause of action for breach of contract in California, the pleader must show evidence of "(1) existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011). Courts have stressed that evidence that the defendant was a party to the contract is essential to the establishment of the existence of a contract. See Gulf Ins. Co. v. Hi-Voltage Wire Works, Inc., 388 F. Supp. 2d 1134, 1136–37 (E.D. Cal. Apr. 28, 2005). "In order to be liable for breach of contract a defendant must be a consenting party to the contract." Monaco v. Liberty Life Assur. Co., C-06-07021 MJJ, 2007 WL 420139, *4 (N.D. Cal. Feb. 6, 2007).

The Court first notes that Plaintiff has properly pleaded the existence of a contract by submitting the terms of the 2008 and 2011 Agreements and pleading the terms of that agreement that are relevant to its breach of contract cause of action. Defendant does not dispute the existence of the 2008 and 2011 Agreements with Plaintiff.

As for the breach, Plaintiff alleges that Defendant breached the 2008 and 2011 Agreements because Defendant failed to give notice before it terminated Plaintiff as a reseller, terminated Plaintiff without cause, and denied Plaintiff the rights it had as to each registered opportunity by registering other resellers to its customers' accounts. Pl.'s Opp'n to Def.'s Mot. to Dismiss 3. Plaintiff also argues that the mutual termination provisions located in the 2008 and 2011 Agreements are unconscionable and therefore unenforceable as a matter of law. Compl. ¶¶ 72–75.

As an initial matter, the Court finds that the mutual termination provisions of the 2008 and 2011 Agreements are not unconscionable. An allegation of unconscionability requires the pleader to state facts relevant to the contract provision's "procedural" and "substantive" unconscionability. Armendariz v. Found. Health Pyschcare Servs., Inc., 24 Cal. 4th 83, 114 (2000). The procedural element of unconscionability focuses on the presence of "oppression" and "surprise." A & M

7

Case No.: 5:12-CV-06209-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS

Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486 (1982). "Oppression" may be shown by evidence of "inequality of bargaining power which results in no real negotiation" or the "absence of meaningful choice." Id. A pleader may claim "surprise" when the "agreed upon terms are hidden" in the contract at issue. Id. Procedural unconscionability alone is insufficient to render a contract term unenforceable because "commercial practicalities dictate that unbargained-for terms [can] only be denied enforcement where they are also substantively unreasonable." Id. at 487. Substantive unconscionability examines whether the contract provision produces "'overly harsh'" or "'one-sided'" results. Armendariz, 24 Cal. 4th at 114 (quoting A & M, 135 Cal. App. 3d at 487). Both elements must be "'present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.'" Armendariz, 24 Cal. 4th at 114 (quoting Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1533 (1997)).

Mutual termination provisions have generally been found to be not unconscionable as a matter of law. Pennington's Inc., v. Brown-Forman Corp., No. 92-35243, 1993 WL 306155, at *2 (9th Cir. Aug. 11, 1993); see also Premier Wine & Spirits v. E.J. Gallo Winery, 644 F. Supp. 1431 (E.D. Cal. Sept. 23, 1986). Procedural unconscionability is generally not present in a mutual termination provision if the complaining party did not "object or seek to negotiate" the mutual termination provision. Premier Wine, 644 F. Supp. at 1440. Mutual termination provisions are also generally not substantively unconscionable because both parties share the same right to terminate the contract. Id.; see also Pennington's, 1993 WL 306155, at *3 ("We conclude that the termination clause in the distributorship agreement is not unconscionable under California . . . law.").

The Court finds that the mutual termination provisions contained in the 2008 and 2011 Agreements of the present case are not procedurally unconscionable. Plaintiff failed to produce evidence that the mutual termination provisions are the result of "oppression," and Plaintiff did not allege that it objected or sought to negotiate the content of the mutual termination provisions at the time of the contract formation. See Zaborowski v. MHN Gov. Servs., Inc., C-12-05109 SI, 2013 WL 1363568, at *3 (N.D. Cal. Apr. 3, 2013). Plaintiff may not claim "surprise" because the mutual

termination provisions are easily understood and printed in large print alongside other important provisions. See Jackson v. S.A.W. Entert. Ltd., 629 F. Supp. 2d 1018, 1023 (N.D. Cal. May 21, 2009) (holding that an arbitration provision lacked procedural unconscionability because, in part, the provision was not "buried in fine print"). Even if Plaintiff argues that the 2008 and 2011 Agreements are procedurally unconscionable because they were offered on a "take it or leave it" basis, such evidence of "adhesion alone" is "insufficient to find a contract unconscionable." Zaborowski, 2013 WL 1363568, at *3.

Likewise, the mutual termination provisions are not substantively unconscionable. Both Plaintiff and Defendant had the same power under the provisions: the power to sever the Agreements upon 30 days prior written notice. See Premier Wine, 644 F. Supp. at 1440 (holding that a mutual termination provision was not substantively unconscionable because "both parties to the Agreement had the same right to terminate the Agreement without cause on 30 days notice"); see also A & M, 135 Cal. App. 3d at 487; Commc'ns Maintenance, Inc. v. Motorola, Inc., 761 F.2d 1202, 1209–1210 (7th Cir. 1984). As such, the result of the provisions could not be described as "one-sided" because they affected both parties in the same manner. Moreover, the Court notes that clauses such as these "advance a public policy interest" because they allow the parties to "end a soured relationship without consequent litigation." See Premier Wine, 644 F. Supp. at 1441.

Having concluded that the mutual termination provisions of the 2008 and 2011 Agreements are not unconscionable, the Court now turns to Plaintiff's arguments for breach of these Agreements and will address each in turn. First, Plaintiff alleges that Defendant failed to give the required notice before it terminated Plaintiff as a reseller. On February 1, 2013, Defendant "declined to renew ISCSI's reseller relationship with NetApp, thereby officially terminating ISCSI as a NetApp reseller." Voydat Decl., Docket Item No. 20-2 at ¶ 4. Although Plaintiff alleges that Defendant terminated its reseller status without giving 30 days prior written notice, the 2011 Agreement expired on January 31, 2013, and Defendant did not enter into another Reseller Agreement with Plaintiff after such expiration. See 2011 Agreement ¶ 4.1. Accordingly, Defendant

United States District Court
For the Northern District of California

did not breach the 2011 Agreement by refusing to enter into another reseller agreement with Plaintiff.[1]

Second, Plaintiff argues that Defendant terminated the 2011 Agreement without cause, amounting to a breach. Pl.'s Opp'n to Def.'s Mot. to Dismiss 3. This argument fails, however, because the 2011 Agreement allowed either party to terminate the contract without cause. 2011 Agreement ¶ 4.2. As explained above, the Court has found that this mutual termination provision is not unconscionable and is therefore still in force. As such, Plaintiff's argument that Defendant terminated the 2011 Agreement without cause fails.

Third, Plaintiff alleges that Defendant breached the 2008 and 2011 Agreements by registering other resellers to sell Defendant's products to Xilinx, ST Micro, CaridianBCT, and Tri-State. Pl.'s Opp'n to Def.'s Mot. to Dismiss 3. In support of this argument, Plaintiff contends that it had the exclusive rights to sell Defendant's products to Xilinx, ST Micro, CaridianBCT, and Tri-State. See Compl. ¶ 17. However, the 2008 and 2011 Agreements clearly appoint Plaintiff as a "non-exclusive RESELLER" of Defendant's products. See 2008 Agreement ¶ 2.1; 2011 Agreement ¶ 2.1. Nothing in the language of both Agreements prevented Defendant from "dual-registering" a customer or encouraging customers to "choose a reseller that" may be "a better match" for the customer's needs. Def.'s Mot. to Dismiss 12. As such, and based on the clear contractual language, Plaintiff's contention that Defendant's practice of dual registering customers constitutes a constructive breach of the Agreement fails.

For these reasons, the Court finds that Plaintiff has failed to sufficiently allege that Defendant breached the 2008 and 2011 Agreements. Accordingly, the Court GRANTS Defendant's Motion to Dismiss with regard to the Plaintiff's First Cause of Action for breach of contract.

---

[1] Plaintiff did not allege that the 2008 Agreement was terminated without notice on any specific date before the expiration of the 2008 Agreement. See Pl.'s Opp'n to Def.'s Mot. to Dismiss; Compl. Furthermore, the fact that Plaintiff entered into the 2011 Agreement with Defendant tends to show that the 2008 Agreement expired without either party expressly terminating it.

**B. Breach of the CaridianBCT Teaming Agreement (Claim 2)**

The dispute regarding Plaintiff's Second Cause of Action primarily concerns whether the CaridianBCT Teaming Agreement actually exists as a valid and enforceable contract between the two parties. In order to show that the CaridianBCT Teaming Agreement was an enforceable contract, Plaintiff must plead facts sufficient to show the complete and definite formation of the contract. See Sateriale v. R.J. Reynolds, 697 F.3d 777, 789 (9th Cir. 2012) ("To be enforceable under California law, a contract must be sufficiently definite 'for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached.'" (quoting Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 209 (2006)). The existence of a contract is properly pled when the pleader offers "facts concerning its formation." Eng v. Hargrave, No. C-10-01776, 2012 WL 116560, at *3 (N.D. Cal. Jan. 13, 2012). The formation of a contract is properly shown through evidence of an offer and acceptance of definite terms. See Perfumebay.com, Inc. v. eBay, Inc., 506 F.3d 1165, 1178 (9th Cir. 2007) (explaining that the accepted proposal must "call for such definite terms in the acceptance, that the performance promised is reasonably certain" to result in the formation of a contract).

The Court finds that Plaintiff has sufficiently alleged the existence of the CaridianBCT Teaming Agreement. First, Plaintiff has sufficiently alleged that both parties mutually assented to the terms of the CaridianBCT Teaming Agreement. Plaintiff filed exhibits containing both the CaridianBCT Teaming Agreement and email exchanges regarding the acceptance and finalization of the terms of the contract. See Voydat Decl. Exs. H-1, H-2. On February 16, 2010, Lella Bennett, Plaintiff's employee, sent the following email regarding the CaridianBCT Teaming Agreement to Michelle Lanuza, Defendant's employee: "Do your team have any further changes or updates to the teaming agreement that we need to discuss?" Voydat Decl. Ex. H-2. Michelle Lanuza replied: "Yes, the latest revision looks good to us." Id. On June 18, 2010, Robert Voydat, President of Defendant company, sent the following email to Samuel Sears, Defendant's employee: "Here's the final version of the teaming agreement for CaridianBCT that everyone agreed to. Not sure why it

hasn't been signed but it was agreed to by Michelle [Lanuza] see below." Id. Plaintiff sufficiently alleged that both parties mutually assented to the terms of the CaridianBCT Agreement by offering as evidence this email exchange illustrating that both parties reached an agreement as to the final terms of the CaridianBCT Agreement. The CaridianBCT Teaming Agreement also contains a commencement date of December 14, 2009, and the relevant contractual terms. See CaridianBCT Teaming Agreement.

A cause of action for breach of contract must also present evidence of valid consideration. See Bliss v. Cal. Co-op Producers, 30 Cal. 2d 240, 248 (1947). Under California law, "'it is enough that some small additional performance is bargained for and given'" to establish valid consideration. Ansanelli v. JP Morgan Chase Bank, N.A., C-10-03892 WHA, 2011 WL 1134451, at *4 (N.D. Cal. Mar. 28, 2011) (quoting House v. Lala, 214 Cal. App. 2d 238, 243 (1963)). The terms of the CaridianBCT Teaming Agreement establish that some consideration was exchanged before execution. The terms state that Defendant will agree to "work towards at least a targeted 15% margin profit" for Plaintiff, and Plaintiff will "represent the NetApp NAS solution as the preferred technology choice." CaridianBCT Teaming Agreement. These terms and others in the CaridianBCT Agreement are sufficient to allege that Plaintiff and Defendant bargained for some performance. See Ansanelli, C-10-03892 WHA, 2011 WL 1134451, at *4 (explaining that consideration may consist of bargaining for performance). As such, Plaintiff has sufficiently alleged the existence of the CaridianBCT Teaming Agreement.[2]

Having found that Plaintiff has sufficiently alleged the existence of the CaridianBCT Teaming Agreement, the parties next dispute whether Plaintiff has sufficiently alleged that the CaridianBCT Teaming Agreement was breached by Defendant. Plaintiff argues that Defendant breached the CaridianBCT Teaming Agreement by:

---

[2] Defendant additionally argues that Plaintiff did not allege the existence of a contract because the 2008 and 2011 Agreements contain an integration clause. The Court does not address this allegation because Defendant has raised it only in its reply to Plaintiff's opposition brief and Defendant cites no law supporting this argument. See Def.'s Reply in Support of Mot. to Dismiss 3–4.

United States District Court
For the Northern District of California

> Participating in direct pricing or terms and conditions negotiations with CaridianBCT, negotiating directly with CaridianBCT instead of with or through ISCSI, presenting pricing terms and conditions to CaridianBCT, not working with ISCSI towards at least a targeted 15% margin profit for ISCSI in any approved pricing, engaging in behavior that could and did jeopardize or undermine ISCSI's Trusted Advisor status, and discussing the specifics of ISCSI's engagement with CaridianBCT with any other resellers or their representatives.

Compl. ¶ 83; Pl.'s Opp'n to Def.'s Mot. to Dismiss 5–6. The Court finds that these allegations state a plausible claim for breach of the CaridianBCT Teaming Agreement because each allegation pertains specifically to a promise made by the Defendant under that Agreement. See CaridianBCT Teaming Agreement; see also Iqbal, 556 U.S. at 663 (a claim is plausible when the court is able to reasonably infer that the defendant could be liable). Furthermore, Plaintiff alleges context-specific factual allegations to support its argument that Defendant breached the terms of the CaridianBCT Agreement. Compl. ¶ 83; Pl.'s Opp'n to Def.'s Mot. to Dismiss 5–6.

For these reasons, the Court finds that Plaintiff sufficiently alleged that Defendant breached the CaridianBCT Teaming Agreement. Accordingly, the Court DENIES Defendant's Motion to Dismiss with regard to the Plaintiff's Second Cause of Action for breach of contract.

**C. Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim 5)**

"California law implies a covenant of good faith and fair dealing in every contract." Mundy v. Household Fin. Corp., 885 F.2d 542, 544 (9th Cir. 1989). The implied covenant of good faith and fair dealing imposes a burden that requires each party to a contract to "'refrain from doing anything to injure the right of the other to receive the benefits of the agreement.'" San Jose Prod. Credit Ass'n v. Old Republic Life Ins. Co., 723 F.2d 700, 703 (9th Cir. 1984) (quoting Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 818 (1979)). "Establishing such a breach of the implied covenant depends upon the 'nature and purposes of the underlying contract and the legitimate expectations of the parties arising from the contract.'" Mundy, 885 F.2d at 544 (quoting Koehrer v. Superior Court, 181 Cal. App. 3d 1155, 1169 (1986)). As such, the implied covenant of good faith

United States District Court
For the Northern District of California

and fair dealing's application is "'limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract.'" McKnight v. Torres, 563 F.3d 890, 893 (9th Cir. 2009) (quoting Spinks v. Equity Residential Briarwood Apartments, 171 Cal. App. 4th 1004, 1033 (2009)). The remedy for breach of the implied covenant of good faith and fair dealing is limited to contractual remedies. Mundy, 885 F.2d at 544.

Plaintiff's allegations that Defendant breached the implied covenant of good faith and fair fail for two reasons. First, many of Plaintiff's allegations regarding Defendant's alleged breach of the implied covenant of good faith and fair dealing are superfluous with its claims for breach of contract. A plaintiff may claim breach of contract and the implied covenant of good faith and fair dealing, but when both causes of action cite the same breach, the cause of action for breach of the implied covenant of good faith and fair dealing may be superfluous with the cause of action for breach of contract. See Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 327 (2000) ("[W]here breach of an actual term is alleged, a separate implied covenant claim, based on the same breach is superfluous."). A claim alleging breach of the implied covenant of good faith and fair dealing cannot be "'based on the same breach' as the contract claim." Daly v. United Healthcare Ins. Co., 10-CV-03032 LHK, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010) (quoting Guz, 24 Cal. 4th at 327). A breach of the implied covenant of good faith and fair dealing is not superfluous with a breach of contract claim when it is based "on a different breach than the contract claim." Daly, 2010 WL 4510911, at *4.

Plaintiff's allegation that Defendant breached the implied covenant of good faith and fair dealing by "dual registering customers with other resellers" is superfluous with the claims alleged in Plaintiff's first and second causes of action for breach of contract. See Compl. ¶ 77. Plaintiff argues in its first cause of action that Defendant breached the 2008 and 2011 Agreements through the dual registration of CaridianBCT and ST Micro. Id. Plaintiff argues in its second cause of action for breach of contract that Defendant breached the CaridianBCT Teaming Agreement "by

dual registering and working directly with CaridianBCT." Id. at ¶ 83. In its third cause of action, Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing by "dual registering customers with other resellers." Id. at ¶¶ 77, 83; see Daly, 2010 WL 4510911, at *4 (explaining that a claim for breach of the implied covenant of good faith and fair dealing cannot be based on the same breach alleged in a claim for breach of contract).

Likewise, Plaintiff's arguments that Defendant breached the implied covenant of good faith and fair dealing by working directly with customers, effectively terminating the Agreements without cause or notice, and effectively terminating the Agreements and the CaridianBCT Teaming Agreement, fail for the same reason. See Compl. ¶ 107. Plaintiff specifically cites "working directly with customers" as a breach of the terms of the CaridianBCT Teaming Agreement. Id. ¶ 83. Plaintiff's allegation that Defendant breached the implied covenant of good faith and fair dealing by "effectively terminating the Agreements without cause or notice," see Compl. ¶ 77, is superfluous because it pertains directly to allegations of breaches of section 3.2 of the 2008 Agreement, and section 4.2 of the 2011 Agreement, which were alleged in Plaintiff's first cause of action for breach of contract. See Guz, 24 Cal. 4th at 327. Plaintiff's allegation that Defendant breached the implied covenant of good faith and fair dealing by terminating the Agreements and the CaridianBCT Teaming Agreement merely alleges that by breaching those contracts, Defendant also breached the implied covenant of good faith and fair dealing. This amounts to a superfluous and therefore ineffective claim for breach of the implied covenant of good faith and fair dealing. See Daly, 2010 WL 4510911, at *4 (holding that a claim for breach of the implied covenant of good faith and fair dealing must involve something beyond breach of the contractual duty).

Secondly, the Court finds that Plaintiff's allegation of breach of the implied covenant of good faith and fair dealing imposes an obligation that is inconsistent with the Agreements' actual terms. Plaintiff argues that Defendant breached the implied covenant of good faith and fair dealing by "encouraging customers to work with other resellers and not allowing them to work with ISCSI." Compl. ¶ 107. This argument must fail as it imposes an obligation that is inconsistent with

United States District Court
For the Northern District of California

the terms of the 2008 and 2011 Agreements, in which Plaintiff was granted the non-exclusive right to sell Defendant's products. See McKnight, 563 F.3d at 893 (explaining that the implied covenant of good faith and fair dealing functions solely to ensure compliance with the terms of the contract and cannot impose additional obligations not contemplated by the contract).

For these reasons, the Court finds that Plaintiff did not sufficiently allege that Defendant breached the implied covenant of good faith and fair dealing. Accordingly, the Court GRANTS Defendant's Motion to Dismiss with regard to the Plaintiff's Fifth Cause of Action for breach of the implied covenant of good faith and fair dealing.

**D. Quantum Meruit (Claim 11)**

Quantum meruit is "an equitable remedy implied by law under which a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." In re De Laurentiis Entert. Grp., Inc., 963 F.2d 1269, 1272 (9th Cir. 1992). Quantum meruit is especially appropriate when "the parties have no actual express contract covering compensation." Precision Pay Phones v. Qwest Commc'ns Corp., 210 F. Supp. 2d 1106, 1112 (N.D. Cal. May 31, 2002).

Plaintiff's request for compensation under quantum meruit is not appropriate under this circumstance because Plaintiff agreed to terms regarding compensation under the 2008 and 2011 Agreements and the CaridianBCT Teaming Agreement. Compl. ¶ 64–66. Plaintiff states in the complaint that "ISCSI earns margins for the marketing and sale of NetApp products and services to customers ranging from 15% to 45% of the revenues that NetApp receives from ISCSI's sale of such products and services" under the 2008 and 2011 Agreements. Id. at ¶ 65. The CaridianBCT Teaming Agreement also contained a provision regarding compensation stating: "Both parties agree to work towards at least a targeted 15% margin profit for ISCSI in any approved pricing." CaridianBCT Teaming Agreement.

Case5:12-cv-06209-EJD Document39 Filed07/31/13 Page17 of 23

United States District Court
For the Northern District of California

As such, the Court finds that Plaintiff has not sufficiently alleged that it is entitled to quantum meruit compensation because of the existence of a compensation system agreed to by both parties. See Precision Pay Phones, 210 F. Supp. 2d at 1112. Accordingly, the Court GRANTS Defendant's Motion to Dismiss with regard to the Plaintiff's Eleventh Cause of Action for quantum meruit.

**E. Unjust Enrichment (Claim 6)**

Under California law, unjust enrichment is a remedy that "does not lie when an enforceable, binding agreement exists defining the rights of the parties." Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996). Plaintiff is not entitled to the remedy of unjust enrichment because it has alleged that the 2008 and 2011 Agreements and the CaridianBCT Teaming Agreement defined the rights of both parties and that Defendant breached these Agreements. Compl. ¶¶ 64-85; see id.; see also In re Facebook PPC Advertising Litigation, 709 F. Supp. 2d 762, 770 (N.D. Cal. Apr. 22, 2010) (dismissing the plaintiff's claim for unjust enrichment because the plaintiff had already stated a claim for breach of contract, deeming the unjust enrichment claim "unnecessary").

Accordingly, the Court GRANTS Defendant's Motion to Dismiss with regard to the Plaintiff's Sixth Cause of Action for unjust enrichment.

**F. Intentional Misrepresentation/Fraud (Claim 7)**

A cause of action for intentional misrepresentation/fraud requires that Plaintiff establish (1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, i.e., to induce reliance, (4) justifiable reliance, and (5) resulting damage. Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990 (2004); Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009). A claim for fraud must satisfy the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure, which states: "a party must state with particularity the circumstances constituting fraud

17

Case No.: 5:12-CV-06209-EJD
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT'S MOTION TO DISMISS

United States District Court
For the Northern District of California

or mistake." Fed. R. Civ. P. 9(b); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). "Mere conclusory allegations of fraud are insufficient." Moore v. Kayport Package Express, 885 F.2d 531, 540 (9th Cir. 1989)).

The Court finds that Plaintiff's allegations of intentional misrepresentation/fraud fail to satisfy both the elements of the claim and the heightened pleading standard under Rule 9(b). See Fed. R. Civ. P. 9(b). Plaintiff makes several conclusory legal arguments in support of its argument that the elements of intentional misrepresentation were satisfied. As an example, Plaintiff argues that Defendant "intentionally and with the intent to deceive supplied false and misleading information to ISCSI and/or failed to disclose material facts to ISCSI." Compl. ¶ 127. This statement fails to meet the requirements of Rule 9(b) because it asserts conclusions without any factual support that Defendant committed the alleged fraud. See State of Cal. ex rel Mueller v. Walgreen Corp., 175 F.R.D. 631, 634 (N.D. Cal. May 27, 1997) ("[A] plaintiff alleging fraud must set forth the circumstances indicating the falseness of the statements, including the time, place, and content of the allegedly fraudulent representation or omission, as well as the identity of the person allegedly perpetrating fraud."). Plaintiff also argues that an employee of Defendant perpetrated fraud by "causing the dual registration for ST Micro to Agilysys, a competitor of ISCSI." Compl. ¶ 43. Plaintiff fails to present any legal or factual support for its argument that Defendant committed fraud by "dual registering" any one of its customers. Id.

For these reasons, the Court finds that Plaintiff did not sufficiently allege a cause of action for intentional misrepresentation/fraud. Accordingly, the Court GRANTS Defendant's Motion to Dismiss with regard to the Plaintiff's Seventh Cause of Action for intentional misrepresentation/fraud.

**G. Intentional Interference with Contractual Relations (Claim 8)**

To state a claim for intentional interference with contractual relations, Plaintiff must show: (1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of this contract,

(3) defendant's intentional acts designed to induce breach or disruption of the contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) resulting damage. CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1105 (9th Cir. 2007); Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004).

Plaintiff fails to allege a claim for intentional interference with contractual relations simply because it did not sufficiently allege an actual breach or disruption of any contractual relationship with a third party. Plaintiff argues that this element is satisfied because Defendant's "misconduct prevented performance of ISCSI contracts by failing and refusing to pay commissions on revenues generated by customers introduced by ISCSI." Compl. ¶ 148. This statement confuses Defendant's alleged breach of the 2008 and 2011 Agreements by not paying commissions with a disruption of a third-party contract. Plaintiff must specifically state that one of its contracts with a third party was actually breached or disrupted by Defendant's conduct. See Luxpro Corp. v. Apple, Inc., No. C-10-03058 JSW, 2011 WL 1086027, at *10 (N.D. Cal. Mar. 24, 2011) (holding that Plaintiff must state facts regarding how the contractual relationships ended in order to allege a breach or disruption of the contractual relations). Merely alleging that its rights under the 2008 and 2011 Agreements were frustrated by Defendant's conduct will not satisfy that burden.

For these reasons, the Court finds that Plaintiff did not sufficiently allege a cause of action for intentional interference with contractual relations. Accordingly, the Court GRANTS Defendant's Motion to Dismiss with regard to the Plaintiff's Eighth Cause of Action for intentional interference with contractual relations.

**H. Intentional Interference with Prospective Economic Relations (Claim 9) and Negligent Interference with Prospective Economic Relations (Claim 10)**

To state a claim for intentional interference with a prospective economic relationship Plaintiff must show: (1) an economic relationship between the plaintiff and a third party with the probability of future economic benefit to plaintiff, (2) defendant's knowledge of the relationship,

(3) intentional wrongful acts by defendant intended to disrupt the relationship, (4) actual disruption, and (5) economic harm to plaintiff. Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1151 (9th Cir. 2008). It is especially important that Plaintiff show that Defendant's alleged interference is not only wrongful, but unlawful as "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1159 (2003); CRST Van, 479 F.3d at 1109.

Contrary to Plaintiff's argument that it may satisfy the element of showing a "wrongful act" by alleging "improper motive or use of improper means," improper motive alone does not establish an independent wrongful act. See Korea, 29 Cal. 4th at 1159. The Supreme Court of California in Korea expanded on this rule by stating its relevance to the flow of free market competition:

> The tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct.

Id. at 1158–59 (internal citations omitted); see also id at 1159 n.11 ("[S]uch an act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive"); cf. Impeva Labs, Inc. v. Syst. Planning Corp., No. 5:12-CV-00125 EJD, 2012 WL 3647716, at *6 (N.D. Cal. Aug. 23, 2012) (denying defendant's motion to dismiss as to the plaintiff's claim for intentional interference with prospective economic relations because Plaintiff alleged patent infringement, an unlawful act). Plaintiff ignores this important distinction, even stating in its Opposition to Defendant's Motion to Dismiss that "ISCSI need not allege the unlawfulness of NetApp's interference to satisfy the wrongful act element of intentional interference." Pl.'s Opp'n to Def.'s Mot. to Dismiss 21.

Plaintiff's claim for negligent interference with prospective economic relations fails for the same reason. To state a claim for negligent interference with prospective economic relations Plaintiff must also allege "wrongful conduct as defined by Korea Supply." Impeva, 2012 WL 3647716, at *6. Plaintiff's claim for negligent interference with prospective economic relations

United States District Court
For the Northern District of California

fails because it also did not allege "wrongful conduct" as defined by Korea Supply. See Compl. ¶¶ 165–176; see also Pl.'s Opp'n to Def.'s Mot. to Dismiss 22.

For these reasons, the Court finds that Plaintiff did not sufficiently allege a cause of action for intentional or negligent interference with prospective economic relations. Accordingly, the Court GRANTS Defendant's Motion to Dismiss with regard to the Plaintiff's Ninth and Tenth Causes of Action.

**I. Violation of the Unfair Competition Law (Claim 3)**

California's Unfair Competition Law ("UCL") prohibits businesses from engaging in unlawful, unfair, deceptive, or fraudulent business practices. See Cal. Bus. & Prof. Code §§ 17200 et seq. The UCL applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).

First, the UCL proscribes "any unlawful" business practice by "borrowing" violations of other laws and treating them "'as unlawful practices that the unfair competition law makes independently actionable.'" Id. (quoting Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999)). Common law theories can even form the basis for a cause of action under the "unlawful" prong of the UCL. Mercado v. Allstate Ins. Co., 340 F.3d 824, 829 n.3 (9th Cir. 2003); see also Facebook, 709 F. Supp. 2d at 771 ("Plaintiffs' allegation of a systematic breach of contract is a sufficient predicate for unlawful business practices."). As such, the Court finds that Plaintiff has stated a claim for a violation of the UCL because it has sufficiently pleaded a breach of the CaridianBCT Teaming Agreement, as explained above.

For these reasons, the Court finds that Plaintiff sufficiently alleged that Defendant violated the UCL. Accordingly, the Court DENIES Defendant's Motion to Dismiss with regard to the Plaintiff's Third Cause of Action for violation of the UCL.

United States District Court
For the Northern District of California

**J. Common Law Unfair Competition (Claim 4)**

The availability of the tort of common law unfair competition as a cause of action is generally limited to claims that allege the "passing off" of "one's goods as those of another" or analogous situations. See Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1147 (9th Cir. 1997); see also Oracle v. DrugLogic, Inc., No. C-11-00910 JCS, 2011 WL 5576267, at *12-15 (N.D. Cal. Nov. 16, 2011) (dismissing claim for unfair competition because the claim failed to allege a fact related to "passing off" or an analogous situation). Plaintiff's definition of common law unfair competition proposes a different scope of punishable activities under common law unfair competition and cites several facts that it believes to be punishable under that scope. See Pl.'s Opp'n to Def.'s Mot. to Dismiss 10. As such, Plaintiff has failed to state a claim for common law unfair competition because it has not alleged any facts relating to the "passing off of one's goods as those of another" or any other analogous situation. See Southland Sod, 108 F.3d at 1147 (explaining that a claim for the common law tort of unfair competition was properly dismissed because the plaintiff's allegations did not "amount to passing off" or the equivalent of such activity).

For these reasons, the Court finds that Plaintiff did not sufficiently state a claim for common law unfair competition. Accordingly, the Court GRANTS Defendant's Motion to Dismiss with regard to the Plaintiff's Fourth Cause of Action for common law unfair competition.

**IV. Conclusion and Order**

For the reasons explained above, the Court orders that Defendant's Motion to Dismiss is GRANTED-IN-PART and DENIED-IN-PART.

Defendant's Motion to Dismiss is GRANTED WITHOUT PREJUDICE with respect to the following causes of action: breach of the 2008 and 2011 Agreements (claim 1); common law unfair competition (claim 4); breach of the implied covenant of good faith and fair dealing (claim 5); unjust enrichment (claim 6) intentional misrepresentation/fraud (claim 7); intentional interference

United States District Court
For the Northern District of California

with contractual relations (claim 8); intentional interference with prospective economic relations (claim 9); negligent interference with prospective economic relations (claim 10); and quantum meruit (claim 11). These claims are DISMISSED WITH LEAVE TO AMEND.

Defendant's Motion to Dismiss is DENIED with respect to the following causes of action: breach of the CaridianBCT Teaming Agreement (claim 2); and violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. (claim 3).

If Plaintiff wishes to file an amended complaint, the Court orders that it be pleaded in compliance with the pleading standards of Rules 8 and 9 and filed within 15 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: July 31, 2013

EDWARD J. DAVILA
United States District Judge