UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INTEGRATED STORAGE CONSULTING SERVICES, INC., a Colorado Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>NETAPP, INC., a Delaware Corporation, and DOES 1-10, inclusive,<br><br>    Defendant. | Case No.: 5:12-CV-06209-EJD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND**<br><br>**[Re: Docket No. 86-1]** |

Presently before the Court is Integrated Storage Consulting Services, Inc.'s ("ISCSI" or "Plaintiff") Motion for Leave to Amend Complaint ("Motion"). Dkt. No. 86-1. The Court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the hearing. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Having fully reviewed the parties' briefings, and for the following reasons, the Court DENIES Plaintiff's Motion.

**I. Background**

Plaintiff ISCSI is a Colorado corporation with its principal place of business in Colorado. Dkt. No. 44, First Amended Complaint ("FAC") ¶ 2. Defendant NetApp, Inc. ("NetApp" or "Defendant") is a Delaware corporation with its principal place of business in California. Id. ¶ 4.

ISCSI markets data center and IT services on behalf of NetApp. Id. ¶ 3. NetApp does not typically sell directly to end users. Id. ¶ 11. Instead, in most cases, NetApp sells its products to NetApp distributors, who then sell NetApp products to resellers such as ISCSI, which then sell NetApp products to end user businesses. Id. However, NetApp works directly to promote sales to end users to ensure satisfactory sales of its products. Id. ISCSI invests hundreds of thousands of dollars in its sales representatives and systems engineers through payment of wages, funding training, and paying for certification tests, to be able to meet NetApp's required guidelines. Id. ¶ 12.

ISCSI has been a NetApp reseller/partner since June 2, 2004. Id. ¶ 13. On or about April 16, 2008, ISCSI and NetApp entered into a revised Reseller Authorization Agreement ("2008 Agreement"). Id. The most recent ISCSI-NetApp written Reseller Authorization Agreement became effective on January 19, 2011 ("2011 Agreement"). Id. In order to become a NetApp partner/reseller, a business must accept the terms and conditions of NetApp's Reseller Authorization Agreement. Id.

Sometime between December 2010 and January 2011, Plaintiff attempted to negotiate the terms of the 2011 Agreement. See id. ¶¶ 17-18. Bob Voydat of ISCSI reached out to Sam Sears of NetApp numerous times to attempt to edit the limitation of liability and other provisions of the reseller agreement because NetApp's website would not accept contract edits. Id. ¶ 18. In mid-January, 2011, Sam Sears told Mr. Voydat that NetApp would not amend the contract and he said that ISCSI was free to accept the agreement and remain a NetApp partner or not accept the agreement and ISCSI would no longer be a NetApp partner. Id. ¶ 19.

A number of other documents are alleged to be incorporate by reference into the Agreements including NetApp's Partner Professional Services Certification Program Guide, 2013

North America Commercial USPS Reseller Guide, 2008 VIP Partner Guide, and 2010 Reseller Guide. Id. ¶¶ 20, 24, 25, 26.

From time to time NetApp and a partner may decide to complete an Account Teaming Agreement, which further describes NetApp's and ISCSI's obligations for each registered opportunity. Id. ¶ 43. For example, in reliance on its right to payments on all revenues from the sale of NetApp products and services, on or about December 14, 2009, ISCSI and NetApp entered into a Teaming Agreement ("CaridianBCT Teaming Agreement") for the provision of services to CaridianBCT, and ISCSI-procured customer. Id. The CaridianBCT Teaming Agreement provides in relevant part that the parties, ISCSI and NetApp, will act in accordance with the terms and conditions set forth in the CaridianBCT Teaming Agreement. Id. NetApp and ISCSI entered into a similar Teaming Agreement for Xilinx. Id. ¶ 44.

The four customers at issue in this action are CaridianBCT, ST Micro, Tri-State, and Xilinx. This Court previously found that ISCSI did not have "exclusive rights to deal" with these four customers based on the Reseller Authorization Agreements and rejected "any theory of breach that is predicated on Defendant's registration or referral of customers to other resellers." See Dkt. No. 81 at 14:4-7, 15:2-3.

## II. Procedural Background

On December 7, 2012, ISCSI filed the original Complaint in this action, alleging eleven claims for relief. Dkt. No. 1. On August 15, 2013, ISCSI filed the FAC, which alleged 21 claims for relief. Dkt. No. 42. ISCSI alleged the parties had entered into a verbal Teaming Agreement for the customer Xilinx, which ISCSI asserts NetApp breached. Id. On September 17, 2013, the Court determined a Case Management hearing was unnecessary and issued a Case Management Order setting, among other pretrial deadlines, a 60 day deadline following entry of the Case Management Order for amendment of the pleadings. Dkt. No. 50. On September 17, 2013, NetApp filed a Motion to Dismiss the First Amended Complaint. Dkt. No. 51.

On July 9, 2014, the Court issued an Order Granting in Part and Denying in Part NetApp's Motion to Dismiss. Dkt. No. 81. In the Order, the Court dismissed ISCSI's claim for breach of the Xilinx Teaming Agreement without prejudice and without leave to amend because this was a

wholly new claim which ISCSI could not add without the Court's permission. Id. at 10:1-5. The Court dismissed without prejudice and with leave to amend ISCSI's claims for fraud, interference with contractual relations regarding Xilinx, and interference with prospective economic relations as to all four customers. Id. at 23:16-17.

On October 10, 2014, ISCSI filed its Motion seeking leave to amend. Dkt. No. 86-1. In the proposed Second Amended Complaint ("SAC"), ISCSI seeks to add a claim for breach of the alleged Xilinx Teaming Agreement and sets forth amended claims for fraud, interference with contractual relations regarding Xilinx, and interference with prospective economic relations. See Dkt. No. 86-2, Ex. 1.

### III. Legal Standard

Most motions to amend the pleadings are initially subject to the liberal standard for amendments contained in Federal Rules of Civil Procedure 15. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). But here, the court-imposed deadline for amendments to the pleadings expired before this motion was filed. As such, Plaintiff's motion is preliminarily governed by Rule 16 rather than Rule 15. Johnson v. Mammoth Recreations Inc., 975 F.2d 604, 607-608 (1992).

Under Rule 16, Plaintiff must initially demonstrate sufficient "good cause" to modify the scheduling order so as to allow for the late amendments. See id.; see also Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). If, and only if, the requisite good cause is shown, the court then turns to an examination of the relevant factors under Rule 15. Hood v. Hartford Life & Accident Ins. Co., 567 F. Supp. 2d 1221, 1224 (E.D. Cal 2008); Johnson, 975 F.2d at 609 ("If that party was not diligent, the inquiry should end.").

### IV. Discussion

In examining this matter, the Court must be mindful of what can constitute "good cause" under Rule 16. "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."

4

Johnson, 975 F.2d at 609. "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." Id. (internal quotations omitted). "[N]ot only must parties participate from the outset in creating a workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999).

Having considered the positions of both parties, the Court has concluded that ISCSI has not met its burden under Rule 16. First, ISCSI filed this motion after the Court granted in part and denied in part NetApp's motion to dismiss ISCSI's FAC, which contained ten entirely new claims for relief, six of which ISCSI had not been given leave to include in the FAC. See Dkt. No. 81 at 9:15. One of those six claims was a claim based upon the existence of a purported Xilinx Teaming Agreement and NetApp's alleged breach of that Agreement. Id. The Court dismissed that claim without prejudice and without leave to amend and declared that ISCSI could only pursue that claim if it could show an entitlement, pursuant to Federal Rules of Civil Procedure 15 and 16, that it had good cause to amend its complaint to add this claim. See Dkt. No. 81at 21-23. ISCSI filed this motion alleging that NetApp breached its agreements with ISCSI and tortuously interfered with ISCSI's customer contracts and relationships. See Dkt. No. 86-1 at 3. Here, like in Johnson, ISCSI simply seeks an order permitting the filing of the amended complaint without moving for relief under Rule 16 or demonstrating that the Rule's requirements are met. Johnson, 975 F.2d at 610. As such, ISCSI's motion is properly denied as procedurally defective.

Second, even were the Court to consider the motion as a de facto motion pursuant to Rule 16, ISCSI has failed to demonstrate good cause to permit amendment of the complaint. Here, ISCSI's requested amendment pertains to facts that it was well-aware of at the time of the filing of the original Complaint on December 7, 2012. See Dkt. No. 1. This case has been pending for almost two years. Despite the ample time and opportunities, ISCSI offers no explanation for not seeking leave to amend before it filed the first amended complaint or before the motion to dismiss was heard. Finally, the existence of an alleged Xilinx Teaming Agreement was not identified during discovery by either party, and ISCSI does not claim it learned of it during the discovery

5

Case No.: 5:12-CV-06209-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

process.  Moreover, ISCSI alleged that the Xilinx Teaming Agreement was breached in September 2012, well before ISCSI filed its original Complaint in December 2012.  <u>See</u> Dkt. No. 86-2 at ¶ 105.  The Court consequently concludes that ISCSI has not demonstrated the requisite diligence.

### IV. Conclusion

Based on the foregoing reasons, ISCIS's Motion for Leave to Amend is DENIED.

**IT IS SO ORDERED.**

Dated: December 3, 2014


EDWARD J. DAVILA
United States District Judge