1

2

3

4                          UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6                                  SAN JOSE DIVISION

7

8   INTEGRATED STORAGE CONSULTING           Case No.  5:12-cv-06209-EJD
    SERVICES, INC.,
9                                           **ORDER GRANTING IN PART AND**
                      Plaintiff,            **DENYING IN PART DEFENDANT'S**
10                                          **MOTION TO DISMISS SECOND**
              v.                            **AMENDED COMPLAINT**
11
    NETAPP, INC.,                           Re: Dkt. No. 99
12
                      Defendant.

13          Presently before the Court is NetApp, Inc.'s ("Defendant" or "NetApp") Motion to

14   Dismiss Integrated Storage Consulting Services, Inc.'s ("Plaintiff" or "ISCSI") Second Amended

15   Complaint.  The Court found this matter suitable for decision without oral argument pursuant to

16   Civil Local Rule 7-1(b) and vacated the hearing.  The Court has subject matter jurisdiction

17   pursuant to 28 U.S.C. § 1332.  Having fully reviewed the parties' briefing, and for the following

18   reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion.

19   I.    BACKGROUND

20         A.     Factual Background

21          The Court's orders on two previous motions to dismiss have discussed the background of

22   this case in some detail.  See Dkt. Nos. 29, 81.  The Court therefore provides only a summary of

23   the relevant facts here.

24          Defendant NetApp, a Delaware corporation with its principal place of business in

25   California, manufactures and sells a range of storage and data management equipment.  Dkt. No.

26   94, Second Amended Complaint ("SAC"), ¶¶s 4, 9-10.  Although Defendant does work directly

27                                             1

28   Case No.: 5:12-cv-06209-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS SECOND AMENDED COMPLAINT

United States District Court
Northern District of California

with end users to promote sales of NetApp products, Defendant typically sells its products through resellers.  Id., ¶ 11.  Plaintiff ISCSI, a Colorado corporation with its principal place of business in Colorado, became one of these resellers in 2004.  Id., ¶¶s 3-4, 12-13.  Plaintiff and Defendant signed a series of Reseller Authorization Agreements ("the Agreements") to capture the terms of their arrangement.  Id., ¶ 13.

Under the Agreements, a reseller could register new sales opportunities through NetApp deal registration programs if the reseller satisfied certain requirements, including demonstrating that it would make the use of a NetApp product central to the proposed deal.  Id., ¶¶s 27-28.  According to Plaintiff, once a reseller registered an opportunity, NetApp promised to work exclusively with that reseller in connection with that customer, including providing special pricing.  Id., ¶¶s 30-33.  Resellers often had to invest significant time and energy into acquiring customers, and the registration system protected them from price competition from other resellers.  Id., ¶ 36.  In addition, from time to time NetApp and a reseller would enter into an Account Teaming Agreement that would further describe NetApp's and the reseller's obligations for a registered opportunity.  Id., ¶ 37.

From 2008 to 2011, Plaintiff put substantial work into selling NetApp products to four customers: CaridianBCT, ST Micro, Tri-State, and Xilinx.  Id., ¶ 40.  Defendant granted Plaintiff deal registrations for all four of these customers.  Id., ¶ 34.  In late 2009, Plaintiff and Defendant entered into a Teaming Agreement to provide services to CaridianBCT (the "CaridianBCT Teaming Agreement"), in which Defendant promised not to jeopardize Plaintiff's "Trusted Advisor" status for the CaridianBCT account.  Id., ¶¶s 37-38.  Plaintiff and Defendant entered into a similar Teaming Agreement for Xilinx (the "Xilinx Teaming Agreement").  Id., ¶ 39.

Plaintiff also alleges that Defendant's representatives repeatedly encouraged Plaintiff to continue to sign up new customers.  Id., ¶ 54.  Defendant allegedly made a number of assurances to Plaintiff about Defendant's commitment to Plaintiff, and these caused Plaintiff to continue its efforts to sell NetApp products to its customers.  Id., ¶¶s 55-56.

Case No.: 5:12-cv-06209-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

United States District Court
Northern District of California

Nevertheless, Defendant later granted other resellers deal registrations for CaridianBCT and ST Micro and encouraged Tri-State and Xilinx to work with other partners. Id., ¶¶s 46-51, 85. For example, Defendant promised CaridianBCT, a customer that Plaintiff had procured, that it would get the same pricing if it chose a different reseller, leading it to opt for Plaintiff's competitor Trace3. Id., ¶¶s 59-60. Plaintiff alleges that Defendant's behavior effectively terminated Plaintiff's relationships with its customers and destroyed Plaintiff's resale business, causing over $10 million in damages. Id., ¶¶s 51, 85. On February 1, 2013, Defendant notified Plaintiff that it did not plan to renew Plaintiff's Reseller Authorization Agreement. Id., ¶ 86.

### B.    Procedural Background

On December 7, 2012, Plaintiff filed the original Complaint in this action, alleging 11 claims for relief. Dkt. No. 1. On July 31, 2013, the Court granted in part and denied in part Defendant's motion to dismiss. Dkt. No. 39. Specifically, the Court denied the motion with respect to a claim for breach of the CaridianBCT Teaming Agreement and a claim for a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. Id. at 11-13, 21. The Court dismissed the remaining nine claims, but with leave to amend. Id. at 7-10, 13-22.

On August 15, 2013, Plaintiff filed its First Amended Complaint, which alleged 21 claims for relief. Dkt. No. 42. On July 9, 2014, the Court issued an Order Granting in Part and Denying in Part NetApp's Motion to Dismiss ("Order on FAC"). Dkt. No. 81. In the Order, the Court dismissed Plaintiff's new claims, including a claim for a breach of the Xilinx Teaming Agreement, without prejudice but without leave to amend because Plaintiff had not first sought leave to amend to add these claims. Id. at 9-10. The Court dismissed without prejudice and with leave to amend four of Plaintiff's claims: (1) fraud, (2) interference with contractual relations regarding Xilinx, (3) intentional interference with prospective economic relations as to all four customers; and (4) negligent interference with prospective economic relations as to all four customers. Id. at 23. However, the Court denied the motion with respect to three claims: (1) a claim for breach of the

United States District Court
Northern District of California

3

Case No.: 5:12-cv-06209-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT

1     CaridianBCT Teaming Agreement; (2) a claim for a violation of the UCL, and (3) a claim for

2     intentional interference with contractual relations related to a contract between Plaintiff and Tri-

3     State.  Id.  The Order did not include a deadline for filing an amended complaint.  Id.

4          On October 10, 2014, Plaintiff moved for leave to file a Second Amended Complaint

5     including all three surviving claims, amended versions of all four claims for which the Court had

6     granted leave to amend, and the claim for breach of the Xilinx Teaming Agreement.  Dkt. No. 86.

7     On December 3, 2014, the Court issued an Order Denying Plaintiff's Motion for Leave to Amend

8     ("Order Denying Leave to Amend") because Plaintiff had not shown diligence in bringing the

9     claim about the Xilinx Teaming Agreement sooner.  Dkt. No. 92.

10         On December 22, 2014, Plaintiff filed a Second Amended Complaint ("SAC") containing

11     seven causes of action: (1) a breach of the CaridianBCT Teaming Agreement; (2) fraud; (3)

12     intentional interference with a contract between Plaintiff and Tri-State; (4) intentional interference

13     with a contract between Plaintiff and Xilinx; (5) intentional interference with prospective

14     economic relations as to all four customers; (6) negligent interference with prospective economic

15     relations as to all four customers; and (7) violation of the UCL.  Dkt. No. 94.  On January 22,

16     2015, Defendant filed the instant motion to dismiss the SAC in its entirety because the Court had

17     denied Plaintiff's motion for leave to amend or, in the alternative, to dismiss the second, fourth,

18     fifth, and sixth causes of action for failure to state a claim.  Dkt. No. 99.  The Court found this

19     matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and vacated

20     the hearing.

21    **II.**     **LEGAL STANDARD**

22         Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

23     specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which

24     it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks

25     omitted).  Although particular detail is not generally necessary, the factual allegations "must be

26     enough to raise a right to relief above the speculative level" such that the claim "is plausible on its

*United States District Court*
*Northern District of California*

4

face." Id. at 556-57.  A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal of a claim under Rule 12(b)(6) may be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

At the motion to dismiss stage, the court must read and construe the complaint in the light most favorable to the non-moving party.  Autotel v. Nev. Bell Tel. Co., 697 F.3d 846, 850 (9th Cir. 2012) (citation omitted).  When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice.  See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

The court must accept as true all "well-pleaded factual allegations" in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.  Nor is a complaint sufficient if it merely "tenders naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal quotation marks omitted).  In other words, "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Eclectic Props. E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 996 (9th Cir. 2014) (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).  "In all cases, evaluating a complaint's plausibility is a 'context-specific' endeavor that requires courts to 'draw on . . . judicial experience and common sense.'" Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014) (alteration in original) (quoting Eclectic

Case No.: 5:12-cv-06209-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT

1    Props. E., 751 F.3d at 996).

2    **III.    DISCUSSION**

3        **A.    Motion to Dismiss SAC in its Entirety**

4            As above, in the Court's order on Defendant's motion to dismiss Plaintiff's First Amended

5    Complaint, the Court dismissed four claims with leave to amend.  However, in the Order Denying

6    Leave to Amend, the Court denied Plaintiff's motion to file an amended complaint containing a

7    new claim for breach of the alleged Xilinx Teaming Agreement because Plaintiff had not shown

8    diligence in bringing the new claim.  In its discussion of the motion for leave to amend, the Court

9    made no mention of any other claim in the proposed complaint.  Nevertheless, Defendant contends

10    that the Court addressed those four amended claims in the Order Denying Leave to Amend.

11    Therefore, Defendant argues, Plaintiff did not have leave to file a SAC containing them.

12            The Court is not persuaded.  When dismissing the four amended claims, the Court

13    explicitly granted Plaintiff leave to amend these claims and set no deadline for Plaintiff to do so.

14    Although the Court denied Plaintiff leave to file an amended complaint with the new breach claim,

15    the Court never altered its previous ruling.  The motion to dismiss the entire SAC will be denied.

16        **B.    Intentional Misrepresentation/Fraud (Claim 2)**

17            The elements of fraud are: (1) a misrepresentation (false representation, concealment, or

18    nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance;

19    (4) justifiable reliance; and (5) resulting damage.  Robinson Helicopter Co., Inc. v. Dana Corp., 34

20    Cal. 4th 979, 990 (2004).  In alleging fraud or mistake, a party must state with particularity the

21    circumstances constituting fraud or mistake.  Fed. R. Civ. P. 9(b).  Malice, intent, knowledge, and

22    other conditions of a person's mind may be alleged generally.  Id.

23            Under Rule 9(b), averments of fraud must be accompanied by "the who, what, when,

24    where, and how" of the misconduct charged, and the circumstances constituting the alleged fraud

25    must be specific enough to give defendants notice of the particular misconduct so that they can

26    defend against the charge and not just deny that they have done anything wrong.  Vess v. Ciba-

27

28    Case No.: 5:12-cv-06209-EJD
     **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

United States District Court
Northern District of California

1   Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations and quotations omitted).

2       Although Plaintiff's opposition to the motion to dismiss refers to a number of statements

3   by Defendant's employees, the fraud claim in the SAC cites only three.  The Court addresses each

4   of these statements in turn.

5           **i.**    **8% Margin**

6       On June 2, 2009, NetApp's Sam Sears ("Sears") and Keith Macove ("Macove") told

7   Plaintiff's President Robert Voydat ("Voydat") that Plaintiff would receive an 8% margin on sales

8   to ST Micro.  SAC, ¶¶s 55, 97.  In fact, Sears and Macove allegedly knew already that Defendant

9   would pay a smaller margin that Plaintiff would be forced to accept.  Id., ¶ 97.  Eventually,

10  Defendant gave Plaintiff only a 5% margin.  Id., ¶ 98.

11      The Court previously found that this statement was "a potentially actionable assertion of

12  fact."  Order on FAC at 18.  Nevertheless, the Court held that Plaintiff had failed to state a claim

13  because it had not pled reliance on the specific statement or resulting damages from that reliance.

14  Id.  Defendant contends that Plaintiff has again failed to plead reliance or damages.

15      The Court finds that the SAC addresses the defects that the Court previously identified.  In

16  particular, Plaintiff has included in the SAC an allegation that it justifiably relied on the

17  representation of an 8% margin and would not have sold NetApp products to ST Micro if it had

18  known that the real margin would be lower.  SAC, ¶ 99.[1]  Plaintiff also alleges that it was

19  damaged by not receiving the promised margin and by expending resources in developing ST

20  Micro as a customer.  Id., ¶ 100.  Although the allegation of reliance remains thin, it is "sufficient

21  to give [Defendant] notice of the particular misconduct so that [it] can defend against the charge."

22  Vess, 317 F.3d at 1106.  The portion of the fraud claim related to the representation of an 8%

23  margin may go forward, and the motion to dismiss will be denied as to that portion.

24

25  _____

26  [1] In its opposition to the motion to dismiss, Plaintiff adds that it would not have accepted a lower margin because of the opportunity cost associated with committing its resources to selling NetApp products.  Dkt. No. 100 at 9.  This allegation does not appear on the face of the SAC, and the Court therefore does not consider it.

27

28  Case No.: 5:12-cv-06209-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT

United States District Court
Northern District of California

United States District Court
Northern District of California

### ii.   Tri-State Purchasing Structure

Plaintiff alleges that Sears told Voydat on April 20, 2011, that Tri-State would use the same purchasing structure moving forward, which included Plaintiff as Tri-State's NetApp partner. SAC, ¶¶s 55, 101. By then, however, Plaintiff alleges that Defendant had already begun the process of promoting Trace3 to take the Tri-State account. Id., ¶¶s 67-70.

Defendant contends that Plaintiff fails to allege that the statement was false when made, that Plaintiff relied on the statement, or that Plaintiff incurred damages as a result. The Court does not agree with Defendant on these points. In fact, the SAC does contain the allegations that Defendant claims it does not. Id., ¶¶s 101-103.

Nevertheless, when examined more closely, the statements alleged in the SAC render implausible Plaintiff's claim that they constituted fraud. According to the SAC, on or about April 20, 2011, Sears specifically told Voydat that Tri-State could use the same pricing structure to purchase NetApp products from any reseller. Id., ¶ 55. Sears also informed Voydat that Tri-State was evaluating which reseller to choose. Id. Sears only offered his opinion that Plaintiff would be in a good position to retain the business. Id.

These representations cannot support an allegation of fraud. As the Court explained before, expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action. Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells, 86 Cal. App. 4th 303, 308 (2000). Sears' opinion about Plaintiff's suitability for the Tri-State business was just that: an opinion. Moreover, contrary to Plaintiff's allegation, Sears made clear that the purchasing structure did not necessarily lock Tri-State into choosing Plaintiff as its partner.

The portion of the fraud claim related to Tri-State will be dismissed. In light of Plaintiff's "repeated failure to cure deficiencies by amendments previously allowed," leave to amend will be denied. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

### iii.    Xilinx Teaming Agreement

Plaintiff also alleges that a table in the Xilinx Teaming Agreement contains an entry "ADDT'L PARTNERS: NA." Id., ¶ 104; Dkt. No. 85-3, Ex. 1-B at 1. According to Plaintiff, Sears knew that Plaintiff would interpret the entry to mean that Plaintiff would be the only partner selling to Xilinx. SAC, ¶ 104. However, as Defendant points out in its motion, Plaintiff does not allege that the statement was false when made. Plaintiff does not respond to this argument.

The portion of the fraud claim related to the Xilinx Teaming Agreement will be dismissed. In light of Plaintiff's "repeated failure to cure deficiencies by amendments previously allowed," leave to amend will be denied. Eminence Capital, 316 F.3d at 1051-52 (quoting Foman, 371 U.S. at 182).

### C.    Intentional Interference with Contractual Relations (Claim 4)

Plaintiff brings two claims for intentional interference with contractual relations, each involving a different contract between Plaintiff and a third party. The first claim, which is not at issue here, involves a contract that Plaintiff entered into with Tri-State ("the Supplier Alliance Agreement"). SAC, ¶¶s 122-137. The second claim, which Defendant moves to dismiss, involves a contract between Plaintiff and Xilinx. Id., ¶¶s 138-152.

Specifically, Plaintiff alleges that, on or about September 27, 2010, Plaintiff and Xilinx entered into a Master Services Agreement ("MSA"), in which Xilinx agreed to pay Plaintiff to provide services described in "Statements of Work." Id., ¶ 140; Dkt. No. 85-3, Ex. 1-E at 1. Around October 2010, Xilinx's Jim Chung told Plaintiff in writing that no formal Statements of Work would be necessary; instead, Xilinx and Plaintiff simply created purchase orders. SAC, ¶ 141. Defendant knew about the Xilinx MSA through Plaintiff's Xilinx registration and the Xilinx Teaming Agreement. Id., ¶ 147. Nevertheless, around September 25, 2012, Defendant referred Xilinx to several other resellers, told Xilinx that Plaintiff would no longer be Xilinx's NetApp partner, and declined several of Plaintiff's registrations so that Plaintiff could no longer provide Xilinx with volume pricing. Id., ¶ 148. Plaintiff alleges that this conduct disrupted the Xilinx MSA by diverting Plaintiff's Xilinx business to other retailers. Id., ¶ 149.

9

United States District Court
Northern District of California

1    To state a claim for intentional interference with contractual relations, Plaintiff must show:

2  (1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of this contract,

3  (3) defendant's intentional acts designed to induce breach or disruption of the contractual

4  relationship, (4) actual breach or disruption of the contractual relationship, and (5) resulting

5  damage.  CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1105 (9th Cir. 2007);

6  Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004).

7    The Court previously dismissed this claim for two reasons.  First, it found that Plaintiff had

8  failed to allege any term or obligation of the MSA that was disrupted through Defendant's

9  conduct.  Order on FAC at 22.  Furthermore, the Court was unable to identify any obligations at

10 all that Plaintiff had under the MSA.  Id.

11   The SAC has not addressed these defects.  Plaintiff now alleges that its course of dealing

12 with Xilinx did not require Statements of Work, but that Plaintiff and Xilinx would use purchase

13 orders instead.  SAC, ¶ 141.  However, this still does not establish any continuing obligation on

14 the part of either Plaintiff or Xilinx.  As the California Supreme Court has held, "if a party to a

15 contract with the plaintiff is free to terminate the contract when he chooses, . . . 'any interference

16 with it that induces its termination is primarily an interference with the future relation with the

17 parties, and the plaintiff has no legal assurance of them.'"  Reeves v. Hanlon, 33 Cal. 4th 1140,

18 1151 (2004) (quoting Restatement (Second) of Torts § 768, cmt. i (1977)).  Here, either under the

19 terms of the MSA or in the parties' course of dealing under the MSA, Xilinx was free to terminate

20 its arrangement with Plaintiff unilaterally.  Moreover, Plaintiff does not allege that Xilinx agreed

21 to purchase services exclusively from Plaintiff.  In short, Defendant could not have interfered with

22 the MSA if the MSA created no continuing obligations that Defendant could disrupt.

23   The claim for intentional interference with contractual relations will be dismissed.  In light

24 of Plaintiff's "repeated failure to cure deficiencies by amendments previously allowed," leave to

25 amend will be denied.  Eminence Capital, 316 F.3d at 1051-52 (quoting Foman, 371 U.S. at 182).

26

27

28

10

Case No.: 5:12-cv-06209-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT

United States District Court
Northern District of California

### D.    Intentional Interference with Prospective Economic Relations (Claim 5)

The elements of intentional interference with prospective economic advantage have been stated as follows: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003) (quoting Westside Ctr. Assocs. v. Safeway Stores 23, Inc., 42 Cal. App. 4th 507, 521-22 (1996)).

Unlike a claim for intentional interference with contractual relations, a claim for interference with prospective economic relations requires proof that the defendant's conduct is wrongful apart from the interference itself. Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 392 (1995). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Korea Supply, 29 Cal. 4th at 1159 (citations omitted).

Plaintiff alleges that Defendant intentionally interfered with Plaintiff's prospective economic relationships with its customers. SAC, ¶¶s 153-175. Plaintiff and Tri-State entered into the Supplier Alliance Agreement in March 2007 and amended it in May 2009. Id., ¶ 155. The Supplier Alliance Agreement provided for a two-year term, subject to renewal. Id. In September 2010, Plaintiff and Xilinx entered into the MSA. Id. Plaintiff also alleges, less specifically, that it was in an economic relationship with each of the customers it had procured. Id., ¶ 156.

Despite knowing about these economic relations, Defendant registered all four customers (Xilinx, CaridianBCT, ST Micro, and Tri-State) to Plaintiff's competitors. Id., ¶¶s 157-158, 160, 162, 164, 166. Plaintiff alleges that these acts were independently wrongful for various reasons. The Xilinx dual registration breached the Xilinx Teaming Agreement. Id., ¶ 159. The CaridianBCT referral violated the CaridianBCT Teaming Agreement. Id., ¶ 161. The ST Micro referral was contrary to Defendant's promise that Plaintiff would receive an 8% margin on sales to

11

1    ST Micro.  Id., ¶ 163.  And the dual registration of Tri-State was contrary to Defendant's

2    representation that Tri-State would continue to use the same pricing structure for buying NetApp

3    products.  Id., ¶ 165.  Moreover, Plaintiff alleges that Defendant engaged in wrongful conduct by

4    encouraging Plaintiff to sell NetApp services until Defendant dual-registered the customers to

5    other resellers.  Id., ¶ 168.  Plaintiff also contends that Defendant's conduct was independently

6    wrongful under the UCL.  Id., ¶ 170.

7          The Court previously dismissed this claim because Plaintiff had failed to state separate

8    claims arising out of almost all of the allegedly wrongful conduct.  Order on FAC at 22-23.  As to

9    the breach of the Caridian BCT Teaming Agreement, the Court found that Plaintiff had not alleged

10   how the breaches of the Teaming Agreements interfered with a prospective economic relationship

11   between Plaintiff and CaridianBCT.  Id.

12         The same deficiencies remain in the SAC.  Again, Plaintiff has not explained in more than

13   conclusory fashion what prospective economic relationship it had with CaridianBCT or ST Micro.

14   As to the Supplier Alliance Agreement and the prospective relationship with Tri-State, the Court

15   found above that Plaintiff had failed to state a claim for fraud arising out of the same alleged

16   misrepresentation.  As to Xilinx, the Court has barred Plaintiff from bringing a claim for breach of

17   the Xilinx Teaming Agreement.  See Order Denying Leave to Amend.  Finally, although a

18   violation of the UCL may serve as the predicate unlawful conduct for a claim for interference with

19   prospective economic advantage, CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d

20   1099, 1109-10 (9th Cir. 2007), Plaintiff does not allege how the conduct above is separately

21   actionable under the UCL.  For the reasons above, that conduct was either not wrongful or not

22   connected to a prospective economic relationship.

23         The claim for intentional interference with prospective economic relations will be

24   dismissed.  In light of Plaintiff's "repeated failure to cure deficiencies by amendments previously

25   allowed," leave to amend will be denied.  Eminence Capital, 316 F.3d at 1051-52 (quoting Foman,

26   371 U.S. at 182).

27

28

*United States District Court*
*Northern District of California*

12

### E.    Negligent Interference with Prospective Economic Advantage (Claim 6)

To establish negligent interference with prospective economic advantage, a plaintiff must show that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.  N. Am. Chem. Co. v. Super. Ct., 59 Cal. App. 4th 764, 786 (1997) (citation omitted).

A claim for negligent interference with prospective economic advantage also requires an independent wrongful act.  Della Penna, 11 Cal. 4th at 392-93; see Venhaus v. Schultz, 155 Cal. App. 4th 1072, 1078-79 (2007).  However, the wrongful conduct need not be willful.  Venhaus, 155 Cal. App. 4th at 1079-80.

Nevertheless, for this claim, Plaintiff relies on the same intentional and allegedly wrongful acts as it does for its claim for intentional interference with prospective economic relations.  SAC, ¶¶s 184, 186, 188, 190, 192, 194.  As above, Plaintiff has not sufficiently alleged that the bulk of this conduct was independently wrongful, and the only exceptions are the alleged breaches of the CaridianBCT and Xilinx Teaming Agreements.  As to CaridianBCT, Plaintiff has not adequately alleged a prospective economic relationship.  And as to Xilinx, again, the alleged breach cannot support this claim because the Court has barred Plaintiff from asserting the breach.

The claim for negligent interference with prospective economic advantage will be dismissed.  In light of Plaintiff's "repeated failure to cure deficiencies by amendments previously allowed," leave to amend will be denied.  Eminence Capital, 316 F.3d at 1051-52 (quoting Foman, 371 U.S. at 182).

13

**IV.   ORDER**

Defendant's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. Claims 4 through 6 are dismissed with prejudice.  Claim 2 is dismissed with prejudice only as to the alleged misrepresentations regarding the purchasing structure for Tri-State and in the Xilinx Teaming Agreement.  The remainder of Claim 2 is adequately pleaded and survives Defendant's Motion.

As the pleadings are now fixed, the Court schedules a Case Management Conference for 10:00 a.m. on **July 28, 2016**.  The parties shall file an updated Joint Case Management Conference statement by **July 21, 2016**.


**IT IS SO ORDERED.**

Dated: July 7, 2016



EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-cv-06209-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT